UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IRWIN INDUSTRIAL TOOL CO. d/b/a LENOX<br><br>Plaintiff/<br>Counterclaim Defendant<br><br>v.<br><br>BIBOW INDUSTRIES, INC., and CHRISTOPHER W. BIBOW,<br><br>Defendants/<br>Counterclaim Plaintiffs. | ) | CIVIL ACTION NO.<br>11-30023-DPW |

MEMORANDUM AND ORDER
November 6, 2012

Plaintiff Irwin Industrial Tool Company, d/b/a Lenox ("Lenox"), brought a declaratory judgment action to establish the validity of U.S. Patent Numbers 7,373,947, 7,415,988, and 7,195,031, all of which list Lenox employees David J. Trettin, Jon Aaron Schlosser, and Mark Allen Catron as the inventors. The Defendants Bibow Industries, Inc. and Christopher W. Bibow counterclaimed, seeking to have Christopher W. Bibow ("Bibow") named as an inventor of the '947, '988, and '031 patents, and to invalidate the Lenox patents due to fraud on the patent office.

## I. BACKGROUND

### *A. Factual Background*

In 2002, Jon Schlosser, a products developer in the Lenox

division of Newell Rubbermaid, spearheaded efforts to improve means of storing and protecting small oxy-acetylene tanks, so-called "hand torches." A 2002 study of torch users led Schlosser to assemble a "Phase II" team to improve on larger air-acetylene torches, air propane torches, and their accessories. Schlosser enlisted David Trettin in March 2004 and Mark Catron in August 2004. In March 2005, the team filed the applications that would mature into the patents at issue in this case.

The '031 patent independently claims a "gauge protector" with two cavities for closely receiving a tank gauge and regulator, '031 Patent col. 6, ll. 21-30 (Claim 1), designed to absorb the force of shocks to the gauge and maintain the integrity of the connection between the gauge and the regulator, '031 Patent col. 1, l. 55-col. 2, l. 1. In dependent claims, the '031 patent claims a handle connected to the gauge protector to facilitate transportation of the tank. *Id.* col. 6, ll. 31-43. The handle and the gauge protector constitute "an integral unitary molded plastic piece." *Id.* col. 6, l. 43.

The '988 patent claims a flexible tank jacket designed to fit the exterior of a storage tank. '988 Patent col. 6, l. 45-col. 7, l. 8 (Claim 1). The specification suggests materials such as "nylon, cordura, cotton, polyester, leather, denim, other synthetic materials or other materials that provide the necessary durability and flexibility." '988 Patent col. 2, ll. 46-49. The

patent also claims a “hose storage assembly” affixed to the jacket, comprising:

> a base that surrounds the tank when the storage system is mounted on the tank, a first flange and a second flange extending from the base a distance sufficient to create a space between the first flange and the second flange to retain the hose in the wound state.

‘988 Patent col. 6, ll. 57-63. Finally, the patent claims a variety of pockets attached to the jacket for storing accessories and tools. ‘988 Patent col. 6, l. 63-col 7., l. 2; *id.* col. 8, ll. 8-9.

The ‘947 patent claims a “storage system” essentially collecting the various elements of the ‘031 and ‘988 patents--including the gauge protector, flexible jacket, hose-wrapping assembly, and pockets. The full storage system is depicted as follows:



The named inventors assigned the ‘031, ‘988 and ‘947 patents to Lenox.

The Lenox patents list only Schlosser, Trettin, and Catron as the inventors. Christopher Bibow, president and owner of Bibow Industries, claims that he should be named as a co-inventor because he provided some portion of the ideas, information, and technology upon which the Lenox patents are based. Over the course of several years, Bibow communicated about his ideas with various employees at Newell Rubbermaid, and its subsidiaries Lenox, Irwin Industrial Tool, and Bernzomatic (collectively, “Lenox”). Bibow says he felt comfortable sharing his intellectual property because, among other things, he had filed his own materials with the PTO prior to any communications with Lenox.

Bibow began disclosing documents to the PTO regarding an organizer for tank accessories in the summer of 2003. In October 2003, Bibow filed an application that would mature into U.S. Patent Number 6,976,502. That patent claims a “tank hose handling system,” ‘502 Patent col. 6, ll. 45-59, which is essentially a shaped hangar that couples with the top of a tank and hangs off the side. The device, standing alone and as attached to a tank, is depicted in the patent as follows:




Bibow called his device the TankMate. In late summer 2003, Bibow sent samples of the TankMake to Lenox, and contacted Jon Schlosser to inquire if Lenox would be interested in buying or licensing the device. Schlosser told Bibow he had a "neat invention," but Schlosser also explained that he was not sure it would fit into the Lenox product line given uncertainties in business strategy. Schlosser said Lenox would need time to evaluate the idea, but would keep Bibow's information.

Over the next year and a half, Bibow marketed the TankMate at various trade shows, where the product was well-received. Bibow continued to communicate with and send samples to Schlosser and other Lenox employees, who continued to provide positive feedback about--but equivocal interest in--the TankMate. Bibow contends that, on a few occasions, he and Schlosser discussed ways in which the TankMate might be altered, including making a

sleeve with pockets for a tank. Bibow never communicated with Trettin or Catron.

In July 2004, Bibow also filed disclosure documents with the PTO for a “regulator with tank carry handle.” Bibow described a handle that would be “cast / forged / or otherwise attached to the regulator nut (or some other portion of the reg.).” Those initial disclosures and later application would mature into U.S. Patent Number 7,588,276. As relevant here, the ‘276 patent claims a “tank handle system,” involving a “tank handle” with a “generally flat configuration,” which couples by use of a threaded nut to a tank’s gas passageway and gas pressure regulator. ‘276 Patent col. 10, ll. 22-37. The device is depicted as follows:



In the late summer and fall of 2004, Bibow had several discussions with Schlosser about his flat-plate tank handles. Bibow alleges that those discussions also turned, again, to the evolution of the TankMate into a sleeve with pockets. Meanwhile, in September 2004, Catron posted pictures of a tank handle attached to a gauge protector, as eventually reflected in the Lenox patents. In November 2004, Bibow guided Schlosser and other Lenox employees through a review of the whole Bibow Industries products line, including the TankMate and Tank Carry Handles. Bibow also informed the Lenox employees that he had pending patents on these devices.

***B. Procedural History***

In response to overtures from Bibow in late 2010 and early 2011 that he still considered himself a co-inventor of the Lenox patents, Plaintiff filed this declaratory judgment action on January 27, 2011. On June 29, 2011, Judge Ponsor, who was previously assigned to this case, denied the Bibow Defendants' motion to dismiss. The Bibow Defendants then filed their answer and seven counterclaims--including claims for violation of the Newell Rubbermaid code of conduct, breach of fiduciary duty, conversion, and violation of the Sherman Act--in July 2011.

After two rounds of motions to dismiss the Bibow Defendants' counterclaims and amended counterclaims, I dismissed all

counterclaims except the two remaining in this action--a claim to name Bibow as an inventor on the Lenox patents, and a claim for invalidation of the Lenox patents due to fraud on the patent office in failing to name all of the inventors. Lenox now moves for summary judgment on its claims for declaratory relief and on the remaining counterclaims of the Bibow Defendants.

## II. LEGAL FRAMEWORK

Fed. R. Civ. P. 56(c) “mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.” *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986). The question is whether the “pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact.” Fed. R. Civ. P. 56(c).

The Lenox claim for declaratory relief and the Bibow Defendants’ counterclaims all turn on whether Bibow should have been named as a co-inventor of the Lenox patents. At trial, the Defendants would have the burden of proving by clear and convincing evidence that Bibow was a co-inventor of the Lenox patents. *Eli Lilly & Co.* v. *Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004); *Ethicon, Inc.* v. *U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). Accordingly, “[s]ummary judgment is

properly granted if the evidence, when viewed in a light most favorable to the non-moving party, fails to establish the inventorship of an omitted inventor by clear and convincing evidence." *Linear Tech. Corp.* v. *Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed. Cir. 2004).

To meet the "clear and convincing" standard, an alleged co-inventor cannot rely on his testimony alone. Rather, the alleged co-inventor must provide corroborating evidence about the inventive process and the communications with the named inventors. *Eli Lilly*, 376 F.3d at 1359; *Ethicon*, 135 F.3d at 1461.

The pertinent statutory provision does not quantify the inventive contribution required for a person to qualify as a joint inventor. *See* 35 U.S.C. § 116 ("Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent."); *Fina Oil & Chem. Co.* v. *Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("[T]o be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.").

It is clear, however, that "[c]onception is the touchstone of inventorship." *Burroughs Wellcome Co.* v. *Barr Laboratories, Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). "Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybritech Inc.* v. *Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (internal quotations and citations omitted). "[A] person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known and the current state of the art." *Fina Oil*, 123 F.3d at 1473.

Additionally, the alleged joint inventor "must demonstrate that his labors were conjoined with the efforts of the named inventors" through "some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly*, 376 F.3d at 1359.

## III. ANALYSIS

Bibow asserts that he contributed to the invention the following elements of the Lenox patents: (1) the tank handle and new regulator; (2) the sleeve with pockets for a tank; and (3) the hose wrap. The only corroborated contributions Bibow made to the invention of the Lenox patents, however, are his TankMate and Tank Handles as conceived in 2004 and communicated to Lenox. Bibow's devices constituted at most the state of the art upon

which Lenox employees proceeded to innovate. There is, therefore, no genuine dispute of material fact over the question whether Bibow was a co-inventor of the Lenox patents. The Defendants have failed as a matter of law to demonstrate that Bibow was a co-inventor.

***A. Handle and New Regulator***

Bibow first argues he contributed to inventing the "handle" and "new regulator" in the Lenox patents. Bibow's communications to Lenox about his ideas for tank handles raise no genuine issue as to his co-inventorship. That Bibow invented one sort of handle does not mean he contributed to the invention of every handle ever attached to a torch tank. Rather, as described both in his initial disclosures and eventual patent, Bibow conceived of a handle cast to the regulator or attached by a nut. '276 Patent col. 10, ll. 22-37.

The Lenox '031 patent, meanwhile, discloses a gauge protector in independent claim 1, with an attached handle described in dependent claims 2 through 7. "[A] dependent claim adding one claim limitation to a parent claim is still a claim to the invention of the parent claim, albeit with the added feature; it is not a claim to the added feature alone." *Nartron Corp.* v. *Schukra U.S.A. Inc.*, 558 F.3d 1352, 1358-59 (Fed. Cir. 2009). In other words, the invention of a dependent claim includes all the features of the claim on which it depends. *Id.*

Here, the innovation of the Lenox gauge protector claim is, self-evidently, protection of the gauge and regulator. The innovation of the dependent handle claim is not merely a means of transportability; rather, it is a means of reaping the benefits of gauge protection without sacrificing transportability. The ideas for a tank handle advanced by Bibow--and disclosed to the PTO, Lenox, or any others--did not involve any sort of gauge and regulator encasement, and thus did not involve the core innovation of the Lenox handle.

Lenox, for its part, included images of tank handles from Bibow's website in its application to the PTO,[1] which nevertheless allowed the patents to issue. Bibow has failed to rebut the resulting presumption of validity, including usefulness, novelty, and nonobviousness in light of the prior art. *Medtronic, Inc.* v. *Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567 (Fed. Cir. 1983).

Any suggestion that Bibow also conceived of some sort of gauge protector or encasement is entirely uncorroborated and thus cannot establish co-inventorship. Although Bibow relies on the affidavits submitted by his father, Warren, and sister Carolyn, these affidavits again corroborate nothing more than communication by Bibow to Lenox of the flat-plate handle technology attached to a regulator, as eventually reflected in

---

[1] Quibbles as to exactly which website pages and images Lenox submitted are immaterial, given that the Bibow flat-plate handle was clearly disclosed.

the Bibow '276 patent. Bibow's conception and communication to Lenox of his prior art does not establish his conception of the innovations of the Lenox patents.

With regard to the additional argument that Bibow helped to invent a "new regulator," the Lenox patents claim nothing of the sort. By Bibow's characterization at his deposition: "when you put a handle on a new regulator, you create a new regulator and that's why . . . my documents are titled 'Tank handle with regulator' to the PTO or so on and so forth." Bibow's imaginative legal and metaphysical arguments, however, do not show that he was the creative force behind the actually-claimed elements of the Lenox patents. As discussed above, the Lenox patents disclose a gauge protector with attached handle, not any sort of "new regulator."

Finally, Bibow suggested at his deposition that, by telling Schlosser "we could form something to hold the valve key," he contributed to Lenox's claim for a handle with "a compartment for storing an article," '031 Patent col. 6, ll. 37-38. Bibow does not seriously pursue this argument in his opposition to summary judgment, and with good reason: any communication of the idea for a handle compartment from Bibow to Lenox is, again, entirely uncorroborated.

***B. Sleeve* & *Pockets***

Bibow's contention that he made a contribution to the tank

sleeve with pockets, as claimed in the Lenox ‘988 patent, follows a similar pattern to his contention regarding the regulator and new handle. Bibow advertised and communicated to Lenox, among others, the wire-appendage “TankMate” device later reflected in the Bibow ‘502 patent, which had the capacity to help organize tank accessories. Lenox again disclosed images of Bibow’s device to the PTO in its own patent applications, and those patents issued over Bibow’s prior art. Bibow has again failed to rebut the presumption of validity. His rigid support assembly, with a capacity to hold torch accessories, bears no resemblance to the novel elements of a flexible tank jacket with pockets, as claimed by Lenox.

Seemingly aware of the futility of this line of argument, Bibow argues that he also communicated with Schlosser about “future versions” of the TankMate, which might include a sleeve with pockets. Bibow relies exclusively upon a PTO disclosure document describing a “Totemate” that, among “dozens-to-thousands of different approaches,” would consist of a sleeve to help organize torch accessories.

Putting aside that this document was apparently never produced to Lenox in discovery, it does not corroborate co-inventorship. The document is dated March 31, 2006, and claims invention at some point in 2005; without more specificity, this document cannot corroborate that Bibow invented the device before

Lenox filed its patent applications in March 2005, let alone some prior date of conception of the device by Lenox employees. Moreover, there is no evidence that this disclosure document or the ideas contained in it were ever communicated to Lenox.[2]

***C. Hose Wrap***

The circumstances surrounding Bibow's contention regarding the hose wrap follow the same pattern. Lenox knew about the TankMate, disclosed images of it to the PTO, and the patent issued over that prior art. Once again, Bibow did not conceive of the novel elements of the Lenox patents. Bibow invented one way to organize the hose; Lenox invented another. Bibow's invention of wire appendage did not anticipate Lenox's pair of flanges attached to its tank jacket, and does not allow Bibow to lay claim to Lenox's separate innovation.

Bibow again tries to invent a genuine dispute of material fact where there is none by arguing that there are certain inconsistencies between the testimony of Trettin and Schlosser. I find no such inconsistencies exist. Trettin recalled that Bibow and Schlosser were in frequent contact. Schlosser did not deny as much, although he failed to recall the content of various conversations. In any event, none of this changes the fact that

[2] Even if the contents of this document were communicated to Lenox, the disclosure of "dozens-to-thousands of different approaches" does not constitute the sort of "definite and permanent" idea necessary to establish co-inventorship. *Hybridtech*, 802 F.2d at 1376.

Bibow has failed to corroborate any conception of ideas, and communication of those ideas to Lenox, that would support his status as co-inventor of the Lenox patents based on the hose wrap.

**IV. CONCLUSION**

Lenox is entitled to a declaration that the ‘031, ‘988, and ‘947 patents are not invalid on the basis of failing to name Bibow as a co-inventor. Having determined that Bibow was not a co-inventor of the Lenox patents, I conclude the Defendants’ counterclaim to name Bibow as an inventor of those patents must be dismissed and their counterclaim seeking invalidation of the Lenox patents is moot.

For the reasons set forth more fully above, the Plaintiff’s motion for summary judgment is GRANTED.

***/s/ Douglas P. Woodlock***
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE