UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IRWIN INDUSTRIAL TOOL COMPANY | : | |
| d/b/a LENOX, | : | |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | CIVIL ACTION NO.: |
| v. | : | 3:11-CV-30023 (DPW) |
| | : | |
| BIBOW INDUSTRIES, INC. | : | |
| and CHRISTOPHER W. BIBOW, | : | |
| | : | |
| Defendants/Counterclaim Plaintiffs. | : | |

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS</u>**

Irwin Industrial Tool Company d/b/a Lenox ("Lenox") seeks sanctions against Christopher W. Bibow and Bibow Industries, Inc. (collectively "Bibow"), and Bibow's counsel, Peter D. Prevett ("Prevett") and Prevett and Prevett, LLP (Prevett's law firm), (Bibow, Prevett, and Prevett's law firm collectively referred to as "Defendants"), for their inexcusable pattern of filing frivolous counterclaims and affirmative defenses, ignoring the Court's explicit rulings, and vexatiously multiplying the proceedings in this case.

Lenox brings this motion only after serious and studied consideration. Indeed, none of the undersigned counsel for Lenox has ever filed a motion under 28 U.S.C. § 1927. Lenox takes no measure of joy in filing this motion, but Defendants' horrible conduct simply cannot be ignored. Nor should it escape consequence. Lenox therefore seeks sanctions against all Defendants – Prevett, his law firm, and Bibow – for acting frivolously, vexatiously and wantonly, and for unnecessarily multiplying the proceedings in this litigation.

**ARGUMENT**

I.    **Legal Standards for Sanctions**

A court may impose sanctions against attorneys who "acted unreasonably and vexatiously in multiplying proceedings." 28 U.S.C. § 1927; *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990). An attorney's litigation conduct qualifies as "vexatious" if it is "harassing or annoying, *regardless of whether it is intended to be so.*" *Cruz*, 896 F.2d at 632 (emphasis added). Thus, section 1927 applies where the "attorney's actions . . . evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court." *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 245-46 (1st Cir. 2010) (citations omitted). In evaluating whether an attorney's conduct is unreasonable or vexatious, the First Circuit uses an "objective standard." *Jensen v. Phillips Screw Co*., 546 F.3d 59, 64 (1st Cir. 2008). While the conduct must rise to a level greater than mere negligence, section 1927 does "not require a finding of subjective bad faith . . . nor repeated infractions." *Northwest Bypass Group v. U.S. Army Corp of Eng'rs*, 569 F.3d 4, 6 (1st Cir. 2009) (citations omitted).

Even when sanctions are not expressly authorized by 28 U.S.C. § 1927 or the Federal Rules, a district court may invoke its inherent power to award attorneys' fees and costs against parties or attorneys who "act in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger*, 280 F.3d 26, 42 (1st Cir. 2002). Sanctions for such conduct may work to "make the prevailing party whole for expenses caused by his opponent's obstinacy." *Galanis v. Szulik*, 841 F. Supp. 2d 456, 460 (D. Mass. 2011) (quoting *Chambers*, 501 U.S. at 46). Federal Rule of Civil Procedure 11(c)(3) further provides the Court with the authority to award sanctions under its own initiative. *See* Fed. R. Civ. P. 11(c)(3).

2

## II.    Defendants Violated the Court's Rulings, Acted Vexatiously, and Purposely Multiplied the Proceedings.

Defendants acted frivolously and vexatiously to harass Lenox and skyrocket the expense of this lawsuit.  Defendants' misconduct forced Lenox and its counsel, not to mention this Court, to expend unnecessary time and resources.  The Court itself recognized this persistent problem: "Mr. Prevett seems not capable of understanding orders I give with respect to pleadings." Transcript of May 25, 2012 Hearing ("May 25 Tr.") at 12:8-10 (excerpts attached as Ex. 1). Lenox understands that each attorney must be a zealous advocate for his or her client, but "[a]n attorney's duty to represent a client zealously is not a license to harass." *Cronin v. Town of Amesbury*, 81 F.3d 257, 262 (1st Cir. 1996).  Defendants – both counsel and client – trampled over the line separating zealous advocacy from blatantly vexatious conduct.  Their misconduct should not be without consequence.

Defendants' abusive tactics included: (1) filing and re-filing frivolous counterclaims and affirmative defenses; (2) filing a frivolous appeal; (3) issuing and re-issuing a speculative and irrelevant expert report; (4) unreasonably refusing to enter into a protective order that would have protected from public dissemination both parties' confidential documents; and (5) filing mounds of vexatious discovery motions.  For each of these actions, Lenox, as the prevailing party in this lawsuit, seeks monetary sanctions against Defendants.[1]

### A.    Defendants Filed Frivolous Counterclaims and Affirmative Defenses.

In response to Lenox's initial complaint, Defendants filed a host of state law counterclaims and affirmative defenses that were unfounded and filed for the sole purpose of exposing Lenox to the specter of significant expense and burden in responding to completely

---

[1] Should the Court grant Lenox's Motion, Lenox and its Counsel will provide this Court with a detailed affidavit and bill of costs and fees that Lenox incurred on account of Defendants' sanctionable conduct.

3

irrelevant discovery.  [Dkt 16 (Answer and Counterclaims); Dkt 17 (Amended Answer and Counterclaims)].  Defendants thereafter filed hopelessly pointless, yet harassing, motions seeking to add new claims and defendants-in-counterclaim.  [Dkt 26 (Motion for Leave to Amend to assert an additional counterclaim); Dkt 20 (Motion to Add New Defendants-in-Counterclaim)].

Lenox noted the many deficiencies in the counterclaims (both those asserted and those Defendants sought to add).  As Counsel for Lenox explained, even the amended counterclaims were woefully insufficient:

> I do not believe that the changes you made to the counterclaims cure any of the deficiencies I previously raised with you.  I am happy to have another discussion with you and review the same topics you and I previously discussed if you believe that would be useful or productive.  Otherwise, we will proceed with filing our motion to dismiss.  Please let me know if you would like to have another meet and confer conversation concerning your counterclaims.

Email from J. Burlingame to P. Prevett, dated Aug. 1, 2011 (attached as Ex. 2).  Defendants ignored this invitation, forcing Lenox to seek dismissal of counterclaim counts III-VII and to strike the affirmative defenses in the First Amended Complaint.  [Dkts 18, 19].  Lenox further opposed the other motions.  [Dkt 27, 29].  Defendants, however, refused to withdraw the claims, and persisted in "stubbornly and unobservingly opposing [Lenox's]" motion to dismiss. *Bobe-Muniz v. Caribbean Restaurants, Inc*., 76 F. Supp. 2d 171, 176 (D.P.R. 1999).  The filing and obstinate defense of such frivolous claims merits monetary sanctions against both a client and his attorney.  *United States v. Nesglo*, 744 F.2d 887, 891 (1st Cir. 1984) (affirming lower court's order of sanctions after it had found bad faith in party's filing of frivolous third-party complaint).  This Court already recognized the hopelessly futile nature of these counterclaims, when, at the October 6, 2012 Hearing, it dismissed those "imaginative, I guess I would say, claims and

counterclaims that are raised by the defendant." Hearing Transcript of October 6, 2012 ("Oct. 6 Tr.") at 10:18-20 (excerpts attached as Ex. 3).

**B.** **Despite the Court's Explicit Orders, Defendants Re-Filed the Frivolous Claims and Defenses.**

The Court denied Bibow's motion for leave to amend to add a claim for infringement of the Bibow Patent, admonishing Bibow's counsel that "[y]ou have now had three chances to plead this thing…." *Id.* at 8:8-10; *see also id*. 8-10, 12 (Ex. 3). The Court granted Lenox's motion to dismiss counterclaim counts III-VII "[f]or all of the reasons that are asserted in the plaintiff's Memorandum in Support of its Motion to Dismiss, each one of which is valid…" and determined that "there is inadequate pleading of the counts that are Three through Seven, *whether presented in the First Amended or the Second Amended Complaint*, and I do not mean to let them distract the parties from what are the real issues…." *Id*. at 11:7-9; 11:1-4 (emphasis added). The Court then explicitly ordered Prevett and Bibow to file a response to the Lenox's Amended Complaint "*that does not include Counts Three through Seven* . . . but [that] includes Counts One and Two of the Answer and Counterclaim in this case." *Id*. at 12:3-8. (emphasis added).[2]

In blatant disregard of the Court's Order, Defendants reasserted most of the counterclaims that the Court had dismissed, including the counterclaims for breach of contract, breach of fiduciary duty, conversion, the antitrust claim, and the claim for infringement of a Bibow patent. [Dkt 33]. Counsel for Lenox promptly reminded Defendants of the Court's Order and urged them to withdraw the reasserted counterclaim counts III through VII and the affirmative defenses. *See* Letter from J. Burlingame to P. Prevett, dated October 20, 2011

---

[2] Even had the Court not been so explicit in its order, the dismissal of the asserted counterclaims still would be "with prejudice." *See United States, ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004) ("[I]n the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice.").

(attached as Ex. 4).  Counsel for Lenox cautioned that Defendants' refusal to withdraw the claims may result in a motion for sanctions:

> I have never filed a Rule 11 sanctions motion or a request for monetary relief under 28 U.S.C. § 1927.  I can recall only two instances in which I have told opposing counsel that I believed their conduct merited such a motion.  In neither instance did I have to resort to filing a motion.  While I regret that this is one of the rare instances in which I am compelled to inject a sanctions and/or vexatious litigation issue into my dialogue with another attorney, I am hopeful that you will reconsider your filing.

*Id*. at 2.

Defendants remained obdurate.  They filed another pleading – an Answer and Amended Counterclaims – that deleted the conversion claim and added a statement to the prayer for relief.  No other changes were made.  [Dkt. 34].  Prevett then wrote to counsel for Lenox the next day declining to withdraw his pleading or the remaining counterclaims and affirmative defenses.  *See* Letter from P. Prevett to J. Burlingame, dated Oct. 22, 2011 (attached as Ex. 5).

Counsel for Lenox again urged Prevett to read the transcript of the October 6, 2011 hearing.  *See* Letter from J. Burlingame to P. Prevett, dated Oct. 25, 2011 (attached as Ex. 6).  Counsel for Lenox then spoke with Prevett by phone on Oct. 27, 2011 in another effort to persuade Defendants to withdraw their counterclaims and affirmative defenses.  This too was unsuccessful.

Defendants' obstinate refusal to withdraw the previously dismissed counterclaims and affirmative defenses forced Lenox to prepare another motion to dismiss.  At the same time, counsel for Lenox also served Defendants with a Rule 11 sanctions motion, which again explained the deficiencies associated with this previous filings.  *See* Email from R. Harris to P. Prevett, dated (attaching Motion for Rule 11 and Section 1927 Sanctions) (attached as Ex.7).  Undoubtedly in response to that proposed motion, but just hours before the deadline for filing

Lenox's motion to dismiss, Defendants filed a "corrected and amended" pleaded that withdrew the state law counterclaims.  [Dkt 37].[3]  That pleading, however, still contained the infringement counterclaim and the affirmative defenses.  In an effort to not further burden the Court and in light of the last minute withdrawal of certain claims, Lenox once again revised and re-filed its motion to dismiss. [Dkt 40, 41].  Defendants' opposed this motion, repeating that the already-rejected infringement count and affirmative defenses were properly before this Court.  [Dkt. 42].

The Court noted at the January 19, 2012 hearing that Defendants' corrected and amended pleading suffered from the same infirmities:  "This case needs to be focused on things that are adequately pled and supported, and continuing to revive in theme a variation matters that simply are not appropriate before the Court is a distraction."  Transcript of January 19, 2012 Hearing ("Jan. 19 Tr.") at 3:22-4:1 (excerpts attached as Ex. 8).

Courts have granted sanctions in situations where they are forced to address claims or counterclaims that the Court previously dismissed.  *See Metz v. Unizan Bank*, 655 F.3d 485, 489-91 (6th Cir. 2011) (upholding sanctions where the attorney had re-filed claims that the court previously had dismissed); *Klembeck v. GTE Corp.*, *; 2002 U.S. App. LEXIS 4799, *5 (9th Cir. 2002) (upholding a sanction award against plaintiffs' attorney for re-filing causes of action which had previously been dismissed without leave to amend); *Rady Children's Hosp. v. SEIU, Local 2028*, 2008 U.S. Dist. LEXIS 37047, *6-7 (S.D. Cal. May 5, 2008) ("It was not objectively reasonable for Plaintiff's counsel to refile its claims for breach of contract and declaratory relief. *The Court previously dismissed these exact same claims and even warned Plaintiff that the*

---

[3] Because Defendants' withdrew state law counterclaims in response to Lenox's service of the Sanctions Motion, Lenox does not seek Rule 11 sanctions against Defendants' for the re-filing of the state law counterclaims.  But this pattern of vexatious conduct should nonetheless be considered in the context of this motion under 28 U.S.C. Section 1927 and the Court's inherent power.

*amended complaint should not reiterate the original complaint*. . . . The Court also finds that the refiling of these claims was for an improper purpose.") (emphasis added).

Defendants' ham-handed approach to this litigation, the serial filings, and the continued intransigence in the face of the Court's admonishments needlessly and vexatiously multiplied these proceedings. Defendants' decision to file and then refile the counterclaims and defenses was frivolous; it was designed to harass Lenox and waste this Court's time; and it unnecessarily multiplied the proceedings. The Court should therefore award sanctions associated with such actions and filings.

### C.    Defendants Filed a Frivolous Notice of Appeal.

Although Defendants withdrew the state law counterclaims in late 2011, this did not end their vexatious litigation tactics. Indeed, when Defendants withdrew the state counterclaims, they noticed an appeal to the Federal Circuit, purporting to appeal this Court's October 6, 2011 ruling dismissing the state law counterclaims and denying Bibow's other sundry motions. [Dkt. 38]. Counsel for Lenox advised counsel for Bibow of the premature and frivolous nature of the appeal at this stage, and urged him to withdraw the appeal. Bibow refused to withdraw the appeal, and pursuant to Federal Circuit Rules, Lenox was required to file preliminary documents with the Federal Circuit.

Counsel for Lenox explained to Bibow's counsel why the appeal was premature, and again asked Bibow to withdraw the appeal. *See* Letter from J. Burlingame, dated Dec. 20, 2011 (attached as Ex. 9). Specifically, counsel for Lenox made clear that Court's October 6, 2011 Order unquestionably did not constitute a final, appealable judgment because the order did not "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945).

This objectively baseless appeal continued the vexatious pattern designed to harass and caused this Court to observe that Defendants "want[] to pursue matter that are not properly pursued and devote resources to that, including a frivolous appeal to the Federal Circuit of a non-final matter, which after a period of time has to be dismissed of course." Jan. 19 Tr. 5:2-6 (excerpts attached as Ex. 8). Defendants' frivolous appeal required Lenox to incur unnecessary costs associated with the filing of the notice of appeal, and this Court can and should award appropriate sanctions. *See e.g.*, *Cruz*, 896 F.2d at 635 (filing a frivolous appeal qualifies as "unreasonably and vexatiously multipl[ying] the proceedings."); *Cronin*, 81 F.3d at 262 (sanctioning the attorney and the client for filing a frivolous appeal).

## D.    Defendants Engaged in Vexatious Discovery Tactics Designed to Harass Lenox and Multiply the Proceedings.

Defendants' myriad discovery abuses included: (1) commissioning and serving (and then re-serving) an admittedly speculative and also irrelevant expert report; (2) unreasonably refusing to agree to a straightforward protective order that would govern both parties' production of confidential documents; and (3) filing a bevy of vexatious discovery motions. Each of these actions was vexatious, objectively baseless, and designed to annoy and harass.

### 1.    Defendants Commissioned and Twice Served an Admittedly Speculative Expert Report.

During the October 6, 2011 hearing, the Court and the parties acknowledged that experts were not necessary in light of the Court's determination that the sole issue to be resolved was whether Bibow should have been disclosed as an inventor of the Lenox patents. Oct. 6 Tr. at 14-15 (excerpts attached as Ex. 3). Given the limited scope of the issue, counsel for Lenox agreed with the Court that no expert testimony was needed. *Id*. at 15:8-11. Prevett agreed: "Under your ruling, your Honor, I don't see any need for it either." *Id*. at 15:12-14.

9

In a remarkable development, Defendants nonetheless issued an "expert report" purporting to calculate damages based on Lenox's alleged "infringement" of Bibow's intellectual property. [*See* Dkt 64-1 (Defendants' First Expert Report). Prevett himself later conceded the expert report was "nothing but speculation at this point." Jan. 19 Tr. at 6:23-7:1 (excerpts attached as Ex. 8). The Court expressed dismay at the "speculative" nature of the report, and agreed that because the expert report pertains to the infringement claims, "it probably should be revised then and as a result of this probably will disappear." *Id*. at 8:6-10.

Lenox once again explained to Prevett that his clients had no claim for monetary relief and that the expert report should be withdrawn. Defendants nonetheless served a "Supplemental Report." [*See* Dkt 64-2]. The Supplemental Report was virtually identical to the First Report – the only difference being that the Supplemental Report defined "infringement" to mean "that Lenox used Bibow's intellectual property and claimed it as its own," not to mean "infringement of patent rights," as the term is commonly used. [Dkt 64-2 at 3]. That Report stated that it was not based on any actual marketing or sales documents from Lenox, but was instead based solely on what the expert could glean from his own internet research. [*Id*.]

Upon receipt of the Supplemental Report, Lenox again explained to counsel for Bibow that the report was irrelevant and speculative, and that Defendants should withdraw it.

> As we discussed on our call on February 21st, Lenox continues to take the position that because of the Court's prior dismissal of Bibow's state law and infringement claims, Bibow no longer is entitled to claim damages in this case. The Patent Act does not allow for damages in an action to correct inventorship, and your counterclaim fails to even request such relief. Because there is no claim for damages remaining, any expert report is irrelevant. Finally, the expert report contains nothing but speculation regarding the proper measure of any alleged damages and the amount of such alleged damages. An unreliable report cannot pass muster under Daubert. If you believe your expert report is relevant and reliable, we would appreciate your advising

10

> us of your reasons so we can try to understand your
> position. Absent a resolution of this issue, we anticipate filing a
> motion to strike.

Unsurprisingly, Defendants did not budge. *See* Emails between R. Harris and P. Prevett, dated March 2 and March 3, 2012 (attached as Ex. 10). Accordingly, Lenox filed a motion to strike the report.

The Court recognized the report had no place in this litigation when it granted Lenox's motion to strike at the May 25, 2012 Status Conference. May 25 Tr. at 3:9-11 (striking the expert report); 7:5-13 (explaining "we're not going to have discovery on a highly-speculative damage theory until it's established there's some sort of liability because that kind of discovery is rife with the opportunities to interfere with a competitor's business or someone else's business or use the litigation itself as a form of extortion.") (excerpts attached as Ex. 1)

Despite the report's absurdity, serving it multiplied the proceedings by forcing counsel Lenox to draft numerous communications to Prevett explaining and re-explaining Lenox's position, and forcing Lenox to file a motion to strike. These are precisely the type of tactics that courts have determined to be vexatious. *See Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 246 (1st Cir. 2010) (explaining that the First Circuit "attempting to introduce evidence on irrelevant matters in the face of numerous admonitions to desist" was among that type "litigation conduct we have previously found vexatious and unreasonable").

### 2. Defendants Refused to Agree to a Protective Order Designed to Protect Both Parties' Confidential Documents from Public Dissemination.

Lenox also seeks sanctions for Defendants' unreasonable refusal to agree to a protective order that sought to limit the public dissemination of both parties' confidential documents. Defendants initially sought to withhold from production ***relevant*** documents because Defendants

11

had deemed them confidential, and thus drafted a proposed protective order that called for such relevant information to be completely redacted.  *See* Draft Protective Order sent from P. Prevett to J. Burlingame, dated Jan. 19, 2012 (attached as Ex.11); *see also* Emails between P. Prevett and R. Harris dated Jan. 20, 2012 (attached as Ex. 12).  Lenox did not consent to Bibow withholding relevant information. *See* Ex. 12.

Defendants' second proposed order represented that the information to be redacted was ***irrelevant***.  *See* Draft Proposed Protective Order sent from P. Prevett to R. Harris, dated Jan. 20, 2012 (attached as Ex. 13); *see also* Ex. 12.   After counsel for Lenox noted this stark inconsistency, Prevett clarified that the first proposed order was in error.  Lenox accepted that representation and told Defendants that irrelevant information need not be produced. Email from J. Burlingame to P. Prevett, dated Jan. 25, 2012 (attached as Ex. 14).  Nonetheless, Defendants burdened this Court by filing another unnecessary motion. [Dkt 50].  Lenox was forced to respond and explain to the Court what Lenox already told Defendants: irrelevant information need not be produced. [Dkt. 51].

Defendants also refused to agree to a protective order proposed by Lenox, the purpose of which was to keep documents designated as confidential from being disseminated to the public. Bibow initially agreed to the protective order.  Email from P. Prevett to R. Harris, dated Jan. 19, 2012 (attached as Ex. 15).  The next day Prevett asserted that his client had "problems" with the protective order, but refused to explain the nature of the "problems."  Email from P. Prevett to R. Harris, dated Jan. 20, 2012 (attached as Ex. 16).  Nonetheless, Defendants refused to agree to the proposed Order or ***any*** protective order that would govern the designation and production of confidential information.  Prevett declined to explain why Defendants would not agree to the Proposed Order.  He curtly complained that he "d[id]n't [h]ave time to go thru all those pages in

your PO." *See* Email from P. Prevett to R. Harris, dated Jan. 20, 2012 (attached as Ex. 17).

Defendants refused to propose any terms that would be acceptable to then. *Id.* Days later,

Prevett again reversed course and asked counsel for Lenox if they would prepare a "much shorter

PO" for Defendants' review.  Email from P. Prevett to R. Harris, dated Jan. 28, 2012 (attached

as Ex. 18).  Counsel for Lenox once again complied with Defendants' request in an effort to

compromise.  Counsel for Lenox wrote to Prevett and invited further comments regarding the

shortened protective order:

> Attached please find a draft protective order, which I have
> significantly shortened per your request.  Given that courts
> generally do not like "blanket" protective orders (where *all*
> documents in a case are labeled confidential) we felt that it was
> important to keep in provisions for which type of documents fall
> under the "confidential" designation.  Please let us know if you
> have any comments regarding the terms of the protective order, or
> whether your client will assent to its being filed.

Email from R. Harris to P. Prevett, dated Feb. 1, 2012 (attached as Ex. 19).

Despite Counsel for Lenox's good faith attempt to compromise, Defendants continued to

inexplicably refuse to agree to a protective order.  At each turn, Lenox complied with Prevett's

requests to modify, shorten, and revise the protective order in the hopes that the parties could

resolve any dispute.  Lenox was ultimately unsuccessful.  Indeed, Prevett's only stated reason for

refusing was that he didn't have "time to read all the pages of the PO."  *See* Ex. 17.  Prevett

never gave any other reason regarding why he and Bibow would not agree to protective order,

and it turns out there was no reason.  Indeed, when the Court asked Prevett if there were any

"issues" with the Order at the May 25th Status Conference, Prevett remarkably answered that

"there's no dispute about that."  May 25 Tr. 5:11-20 (excerpts attached as Ex. 1).

Prevett's statement exemplifies the harassing and vexatious nature of Defendants' refusal

to enter into the protective order.  Defendants' refusal was designed to multiply the proceedings,

and force Lenox to incur additional costs.  This is not zealous advocacy.  It is harassment, and should not go without consequence.  *See Bonilla v. Trebol Motors Corp.*, 1997 U.S. Dist. LEXIS 4370, 111-13 (D.P.R. Mar. 27, 1997) (awarding sanctions where defendant's "compliance with their discovery obligations and their conduct generally during this litigation were dilatory, uncooperative and obstructionist.").

> **3.    Defendants Filed Frivolous and Unfounded Discovery Motions that Unnecessarily Burdened Lenox and this Court.**

From the moment discovery commenced, Defendants were unwilling and unable to resolve any so-called disputes with Lenox.  Defendants instead manufactured disputes where none existed, burdened this Court, and forced Lenox to incur costs and fees associated with petty and even concocted issues.

> **a.    Defendants Initially Filed Vexatious Discovery Motions.**

Almost immediately after discovery began, Defendants began manufacturing discovery disputes where none existed.

First, Defendants moved to compel Lenox to disclose the precise location of each document identified in Lenox's Initial Disclosures, even though Lenox already disclosed that all documents were either in Massachusetts or North Carolina.  [Dkt 28].  Lenox opposed the motion, and the Court subsequently denied the motion at the October 6th hearing, explaining that Bibow will receive the specific location of documents in his response to any proper discovery initiatives and that "we are not going to spend time on discovery motion practice over automatic discovery."  Oct. 6 Tr. at 13:3-11 (excerpts attached as Ex. 3).

That motion was just the beginning of Defendants' harassment.  Bibow's second frivolous discovery filing came once discovery began in earnest and the Court set a hearing and status conference for January 19, 2012.  Almost instantaneously, Defendant filed a motion to

continue the January 19th hearing.  As with most of the alleged discovery disputes, Prevett would contact counsel for Lenox the very day Defendants intended to file the motion.  In this case, when counsel for Lenox refused to agree immediately to Defendants' request, Defendants' filed a motion, even though counsel for Lenox was willing to discuss the issues.  [Dkt. 45 at 4; Dkt. 45-5 (email from J. Burlingame to P. Prevett)].  The Court, acknowledging that Defendants had no basis for filing the motion, promptly denied it and held the hearing on January 19th as scheduled.  [Court's Order Denying Bibow's Motion to Continue, dated 12/20/2011].

Third, Defendants filed a motion to extend the discovery deadline based on the need to revise an admittedly speculative "expert report" and because Defendants' allegedly had been unable to serve Mark Catron, one of the Lenox witnesses.  [Dkt. 46].  Once again, Defendants had manufactured a discovery dispute where none truly existed.  As Lenox explained, there was no reason to extend the discovery deadline because the parties had previously agreed that experts were not needed in this case.  [Dkt. 47].  Further, Prevett's implication that Mr. Catron was evading service was disingenuous – counsel for Lenox had agreed to accept service on behalf of Mark Catron, but Prevett simply had not accepted that offer.  [Dkt 47].  The Court again determined that this motion had no merit, and denied the motion with only a limited exception for depositions.  *See* Jan. 19. Tr. at 9:21-10:2 (ordering that depositions already noticed could be taken after the discovery deadline because of scheduling issues, but refusing to otherwise extend the discovery) (excerpts attached as Ex. 8).

> b.    **Defendants' Harassment of Lenox Continued Throughout Discovery.**

Defendants' manufactured and burdensome discovery complaints continued when Lenox began producing documents and responding to other written discovery.  Defendants raised a slew of issues related to Lenox's discovery responses, including contentions that Lenox failed to (1)

produce an adequate privilege log and inappropriately withheld privileged documents; (2) adequately respond to interrogatories and request for admission; and (3) produce documents and provide responses to requests related solely to damages.  From the moment Defendants raised these issues, counsel for Lenox explained to Defendants why their arguments lacked merit, were frivolous, and would ultimately be unsuccessful if raised with the Court.  *See e.g.*, Email from R. Harris to P. Prevett, dated Feb. 18, 2012 (attached as Ex. 20).  On multiple occasions, counsel for Lenox tried to confer with Prevett, and to narrow the issues raised in front of the Court.

Again, Lenox's efforts were unsuccessful.  Defendants filed a wave of discovery motions seeking to compel Lenox to (1) produce a privilege log that had already been produced, and produce documents unquestionably falling within the attorney-client privilege; (2) respond to discovery requests to which Lenox already had responded; and (3) provide responses to discovery seeking information relevant only to claims or defenses that this Court previously dismissed. Bibow also sought sanctions against Lenox.  [Dkts 56, 57, 58, 59].

The Court denied all of Defendants' motions at the May 25, 2012 status conference.  First, the Court determined that no discovery regarding damages would be had until the issue of liability had been determined.  May 25 Tr. 7:5-13.  The Court then asked if Prevett wanted to raise any other issues.  Although Prevett raised many issues in his motions, Prevett refused to pursue any of those arguments in front of the Court.  May 25 Tr. at 6-7.  In other words, even though Defendants' filed approximately 80 pages of discovery motions, forced Lenox to respond to those motions and prepare for a hearing on those issues, and gave no indication before the hearing that they would not pursue those complaints, Defendants apparently had no dispute with the vast majority of the actions of which they complained.  *See* May 25, 2012 Tr. 6:4-7:15.  The Court specifically noted Bibow's motion for sanctions was "frivolous," and denied the four

motions.  *Id*. at  6:1-3 (denying the sanctions motion as frivolous); *Id*. 7:16-17 (denying the other three discovery motions).

Prevett's failure to argue and pursue those issues at the hearing – especially where Defendants gave no indication to Lenox before the hearing that such issues were no longer contested – reveals that none of the issues raised in Defendants' motions were of any real concern.  They were designed to harass Lenox, and to waste Lenox's and this Court's time and funds.  Accordingly, Lenox seeks sanctions associated with Defendants' filing of all of the frivolous discovery motions.

## **CONCLUSION**

Lenox does not bring this motion lightly.  However, this is one of those unfortunate instances requiring sanctions.  Lenox respectfully requests that the Court sanction Defendants in a manner that the Court determines is appropriate to ensure that their future conduct in all other facets of this action is consistent with the Court's rulings and with basic expectations of professional conduct.  Lenox suggests that an appropriate sanction would include an award of fees and costs to Lenox to offset the unnecessary expenses Lenox has had to incur as a direct result of the unwarranted conduct of Defendants.

Dated:  December 3, 2012                     RESPECTFULLY SUBMITTED,

                                             THE PLAINTIFF/COUNTERCLAIM
                                             DEFENDANT,
                                             IRWIN INDUSTRIAL TOOL COMPANY
                                             d/b/a LENOX

                                  By: _____/s/  Thomas J. Finn_____
                                      Thomas J. Finn  (BBO # 561346)
                                      tfinn@mccarter.com
                                      Paula Cruz Cedillo  (BBO # 671443)
                                      pcedillo@mccarter.com
                                      McCARTER & ENGLISH, LLP
                                      CityPlace I
                                      185 Asylum Street
                                      Hartford, Connecticut 06103
                                      Tel: 860.275.6700
                                      Fax: 860.724.3397

                                             - and -

                                      John A. Burlingame (pro hac vice)
                                      john.burlingame@squiresanders.com
                                      Rachael A. Harris  (pro hac vice)
                                      rachael.harris@squiresanders.com
                                      SQUIRE SANDERS (US) LLP
                                      1200 19th Street, N.W.
                                      Suite 300
                                      Washington, D.C. 20036
                                      Tel: 202.626.6600
                                      Fax: 202.626.6780

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of December 2012, a copy of the foregoing was filed electronically and will be served on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


　　　　　　　　　　　　　　　／s／   Thomas J. Finn
　　　　　　　　　　　　　　　Thomas J. Finn