```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


IRWIN INDUSTRIAL TOOL CO.       )
d/b/a LENOX,                    )
                                )
        Plaintiff/              )
        Counterclaim Defendant  )   CIVIL ACTION NO.
                                )   11-30023-DPW
v.                              )
                                )
BIBOW INDUSTRIES, INC., and     )
CHRISTOPHER W. BIBOW,           )
                                )
        Defendants/             )
        Counterclaim Plaintiffs.)
```

## MEMORANDUM AND ORDER
### March 31, 2014

Substantively, this matter revolved around disputed claims to inventorship of three patents, U.S. Patent Numbers 7,373,947, 7,415,988, and 7,195,031. Now before me is a request for sanctions and attorney's fees based upon allegations of vexatiousness in the conduct of the litigation by defendants' counsel.

The Plaintiff, Irwin Industrial Tool Co. d/b/a Lenox ("Lenox") filed its complaint in this case seeking a declaratory judgment establishing the validity of the patents in the face of a simmering dispute with the defendants. The Defendants, Bibow Industries, Inc. and Christopher W. Bibow (collectively referred to as "Bibow") counterclaimed, seeking to have Christopher W. Bibow named as an inventor of the patents, or to invalidate the patents due to fraud on the patent office.

After the denial of their motion to dismiss, Bibow filed an answer and counterclaims--which were amended multiple times. Upon Lenox's motion, I dismissed all but two of Defendants' counterclaims. Lenox thereafter moved for summary judgment on its claim for declaratory relief and on Bibow's remaining counterclaims. On November 6, 2012, I granted Lenox's motion for summary judgment in full and entered judgment in its favor.

Bibow appealed to the United States Court of Appeals for the Federal Court. The Federal Circuit affirmed the judgment of this court in a summary order issued on September 23, 2013. *See Irwin Industrial Tool Co.*, 530 Fed.Appx. 965 (Fed. Cir. 2013).

Prior to the resolution of Bibow's appeal, Lenox moved for sanctions in the form of an award of attorney's fees and costs. In support of its motion, the Plaintiff has invoked Federal Rule of Civil Procedure 11(c)(3), 28 U.S.C. § 1927, the inherent power of this court to impose sanctions, and, in response to an inquiry by me, 35 U.S.C. § 285. Lenox seeks to hold the Defendants, Christopher Bibow and Bibow Industries, Inc., their counsel, Peter D. Prevett, and his firm, Prevett and Prevett, LLP, liable for these sanctions.

## I. DISCUSSION

### A. *The Standard for Imposing Sanctions*

#### 1. *Federal Rule of Civil Procedure 11*

The imposition of sanctions under Federal Rule of Civil Procedure 11 is subject to significant hurdles, both procedural

2

and substantive, which, in this case, preclude relief under that rule.

Section (c)(2) of that Rule (which the Plaintiff does not invoke) provides that a "motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Lenox has not--or at least has not shown--that it has satisfied these procedural prerequisites: consequently it is precluded from seeking the requested relief under that rule. *See Lamboy-Ortiz* v. *Ortiz-Velez*, 630 F.3d 228, 245 (1st Cir. 2010) ("Among other factors disqualifying Rule 11 as a basis for the sanctions here, the court and defendant Ortiz-Vélez failed to satisfy the Rule's procedural requirements.").

Section (c)(3), which the Plaintiff does invoke, governs sanctions imposed "on the Court's initiative." Fed. R. Civ. P. 11(c)(3). On its face, it is not a rule which may be invoked by a litigant. Moreover, as a precondition to the imposition of sanctions, that subsection requires a court to issue an order to show cause prior to the imposition of sanctions. *Id.* No such order has been sought or issued, nor will I issue one at this point--in part because, as described below, if sanctions are

warranted by the conduct of Bibow's counsel, other rules provide a sufficient mechanism to impose them.

The procedural prerequisites necessary to impose sanctions under Federal Rule of Civil Procedure 11 have not been satisfied, and so I find that this section does not provide a basis for me to impose sanctions upon Bibow or its counsel.

*2. 28 U.S.C. § 1927*

28 U.S.C. § 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The First Circuit has explained that "[l]itigation qualifies as 'vexatious' if it is 'harassing or annoying, regardless of whether it is intended to be so.'" *Lamboy-Ortiz* v. *Ortiz-Velez*, 630 F.3d 228, 245 (1st Cir. 2010) (quoting *Cruz* v. *Savage*, 896 F.2d 626, 632 (1st Cir. 1990)). "[S]ection 1927 does not apply to '[g]arden-variety carelessness or even incompetence,' but instead requires that the 'attorney's actions ... evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court.'" *Id.* at 245-46 (citing *Jensen* v. *Phillips Screw Co.*, 546 F.3d 59, 64 (1st Cir. 2008). Imposition of sanctions does "not require a finding of subjective bad faith

4

. . . nor repeated sanctions." *Northwest Bypass Group* v. *U.S. Army Corps of Engineers*, 569 F.3d 4, 6 (1st Cir. 2009) (internal citations omitted). Examples of the type of litigation conduct found sanctionable by the First Circuit include "attempting to introduce evidence on irrelevant matters in the face of numerous admonitions to desist, and 'engag[ing] in obfuscation of the issues, hyperbolism and groundless presumptions.'" *Lamboy-Ortiz*, 630 F.3d at 246 (citing *Cruz*, 896 F.2d at 634). I find such conduct to have taken place here.

   *3.   35 U.S.C. § 285*

Under 35 U.S.C. § 285, a "court in exceptional cases [involving patent disputes] may award reasonable attorney fees to the prevailing party." Once it is determined that a party seeking fees is a prevailing party--which Lenox undoubtedly is here--"determining whether to award attorneys' fees under 35 U.S.C. § 285 is a two-step process" under current Federal Circuit law. *Highmark, Inc.* v. *Allcare Health Management Systems, Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012). First, the prevailing party must demonstrate by "clear and convincing evidence" that the case is "exceptional." *Id.* (citation omitted). If the case is indeed "exceptional," the court then proceeds to determine whether an award is appropriate, and, if so, what amount to award. *Id.* (citations omitted).

> A case may be deemed exceptional when there has been some material inappropriate conduct related to the

> matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions . . . Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.

*Brooks Furniture Mfg., Inc.* v. *Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

Although the test, in the absence of litigation misconduct, requires a finding of "subjective bad faith," the Federal Circuit has explained that such bad faith may be shown by "a wide variety of proofs," taking into account the "totality of the circumstances." *Highmark*, 687 F.3d at 1311. An "[o]bjective baselessness alone can create a sufficient inference of bad faith to establish exceptionality." *Kilopass Technology* v. *Sidesense Corp.*, 738 F.3d 1302, 1314 (Fed. Cir. 2013). "Factors such as the failure to conduct an adequate pre-suit investigation, vexatious or unduly burdensome litigation tactics, misconduct in procuring the patent, or an oppressive purpose are factors which can be indicative of bad faith." *Id.* at 1311. In establishing "objective baselessness," the prevailing party must show "that lack of objective foundation for the claim was either known or so obvious that it should have been known by the party asserting the claim." *Highmark*, 687 F.3d at 1309 (citations omitted).

The appropriate standard for evaluating when to award attorney's fees under 35 U.S.C. § 285 is currently *sub judice* before the United States Supreme Court, which granted certiorari both in *Highmark, cert. granted*, No. 12-1163, 134 S.Ct. 48 (Oct. 1, 2013) and in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 496 Fed.Appx. 57 (Fed. Cir. 2012), *cert. granted*, No. 12-1184, 134 S.Ct. 49 (Oct. 1, 2013). In light of the pendency of this litigation and given the likelihood it will result in some significant refinement to the scope of § 285, I am not inclined - especially after review of the oral argument transcripts in those matters - to rely directly on § 285 where other serviceable mechanisms for evaluating the sanctions claims made here are available. I note only that in my view this case has been demonstrated by clear and convincing evidence to be exceptional within the meaning of § 285.

   *4.   The Court's Inherent Authority*

When sanctions are not otherwise authorized by rule or statute, a district court may invoke its inherent power to award attorney's fees and costs against parties or attorneys who "act in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 33 (1991). *See also Peer* v. *Lewis*, 606 F.3d 1306, 1314–15 (11th Cir. 2010) ("When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the

7

inherent power fills the gap.") (citations omitted).  Such sanctions

> serv[e] the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

*Chambers*, 501 U.S. at 46.

**B.   *The Challenged Conduct***

In its motion for sanctions, Lenox describes a course of conduct which it contends merits sanctions, including: (i) filing and re-filing frivolous counterclaims and affirmative defenses; (ii) filing a frivolous notice of appeal; and (iii) engaging in "vexatious discovery tactics designed to harass Lenox and multiply the proceedings."  I will address each in turn and consider whether the conduct either individually or together warrants sanctions under the standards set forth above.

    *1.   Filing Frivolous Counterclaims and Affirmative Defenses.*

After Lenox filed its complaint in this matter on January 27, 2011, Bibow moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Judge Ponsor denied the motion on June 29, 2011; Bibow then filed their first answer, setting forth three affirmative defenses, together with counterclaims asserting six separate counts against Lenox on July 10, 2011.  Before any further motion practice, Bibow amended its

8

answer and counterclaims, asserting seven counts in a first amended counterclaim.

In its motion for sanctions, Lenox reports that both before and after the filing of the first amended answer and counterclaims, counsel for Lenox explained to Bibow's counsel the deficiencies in the pleading. Bibow did not withdraw their counterclaims or affirmative defenses and so Lenox moved on August 10, 2011 to dismiss the counterclaims and affirmative defenses it viewed as legally deficient.[1] After the filing of the motion to dismiss, by separate motions filed on August 12 and August 26, respectively, Bibow moved to join additional parties as counter-claim defendants and to amend its counterclaims again.

Following a hearing on October 6, 2011, I granted Plaintiff's motion to dismiss and denied Bibow's motion to amend and motion to join additional counterclaim-defendants. During the hearing on that matter, I described the counterclaims asserted by Bibow as "imaginative, I guess" and said that "they make no sense to me." I further explained that "[f]or all of the reasons that are asserted in the plaintiff's Memorandum in support of its Motion to Dismiss, each one of which is valid . . . I am going to allow the Motion to Dismiss Counts Three through Seven."

---

[1] On August 1, 2011, the case was transferred to me from Judge Ponsor.

Finally, I instructed the parties about how the pleading would be carried out going forward:

> Then there is this motion to Amend the Counterclaim . . . I think that the way in which I am going to deal with it is to direct the defendant here to respond to the amended complaint that the plaintiff will be filing . . . Really, the "Delete" function on your word processor is going to do what you need to do, I think . . . I will want an answer from the defendant that does not include Counts Three through Seven . . . The answer to that amended complaint will be filed October 19. It will not include Counterclaim counts Three through Seven because I have denied them.

Despite what I viewed (and still view) as clear instructions, in response to the First Amended Complaint, Bibow filed an Answer and Counterclaim asserting essentially the same counterclaims as those I had dismissed, albeit garnished very slightly with modified factual allegations. Following a letter from Lenox's counsel, which included a warning of possible sanctions under Rule 11 and Section 1927, Bibow again amended its response, removing a counterclaim for conversion, but continuing to assert claims that I had already deemed deficient.

After further additional letters and emails from counsel for Lenox--including service of a motion for sanctions pursuant to Rule 11--on November 7, 2011 (the date that Lenox's response to Bibow's counterclaims were due), Bibow once again withdrew and amended its counterclaim and answer. Despite both my clear instructions and warnings from opposing counsel, however, even this amended response contained a third count for infringement

which I had deemed deficient.  After Lenox filed another motion to dismiss, I explained at a hearing dated January 19, 2012:

> I have before me the motion to dismiss amended counterclaim count 3 . . . .  It's apparent that the defendant simply didn't understand what I had done at the last scheduling conference.  I'm going to allow that motion.  This case needs to be focused on things that are adequately pled and supported, and continuing to revive in theme [and] variation matters that simply are not appropriate before the Court is a distraction.

2. *Filing a Frivolous Notice of Appeal*

In response to dismissal of its counterclaims, on November 7, 2011, Bibow attempted to file an interlocutory appeal to the Federal Circuit purporting to appeal not only the grant of Lenox's motion(s) to dismiss, but also sundry other rulings such as a rejection of a motion to compel filed by Bibow.[2]  As I explained during the January 19, 2012 hearing, the appeal of this

---

[2] To explain this conduct, Bibow's counsel appears to contend that the filing of a notice of appeal was a result of a misapprehension regarding the law of the Federal Circuit, which he perceives differs from that of the First Circuit.  In both the Federal Circuit and the First Circuit the law is clear that, absent certain extraordinary circumstances not present here, no appeal lies until the entry of final judgment.  *See* 28 U.S.C. § 1291; 28 U.S.C. § 1295.  The appeal was inappropriate under either statute.  I note that counsel who prosecuted the appeal on behalf of Bibow, Edward P. Dutkiewicz, has filed an affidavit on behalf of Bibow suggesting that some strategic decisions made by Bibow and his trial counsel, Mr. Prevett, were the result of consultation with him.  Mr. Dutkiewicz, however, did not file an appearance in this court in this matter.  To the degree that Bibow and his trial counsel relied on improvident advice from a stranger to this litigation at the trial level, they are the parties who must stand to answer for it.  The Dutkiewicz affidavit adds nothing meaningful by way of mitigation.

non-final matter was "frivolous," unwarranted and unjustified under any potentially governing law.

    3.    *Engaging in Vexatious Discovery Tactics.*

Lenox sets forth three categories of conduct related to the discovery process which it considers "vexatious": (i) serving and re-serving an unwarranted expert report; (ii) unreasonably refusing to agree to a protective order governing the exchange of confidential documents; and (iii) filing a "bevy" of discovery motions. I will not chronicle each in chapter and verse, rather I set out only the basic events.

    a.    <u>The Expert Report</u>

At the October 6, 2011 hearing, the parties and I discussed the schedule for the completion of discovery and for the filing of dispositive motions. In the course of this discussion, I asked the parties whether expert reports would be necessary-- given my rulings regarding which asserted claims remained viable. Both parties confirmed that there was no need for expert reports:

| | |
|---|---|
| The Court: | Now, I do not see the need for experts. Is there under the nature of the pleadings as so far [have] been defined? |
| Counsel for Lenox: | I agree, your honor. No need for experts from our perspective. |
| The Court: | Mr. Prevett? |
| Counsel for Bibow: | Under your ruling, your Honor, I don't see any need for it either. |

Nevertheless, counsel for Bibow served upon Lenox an expert report dated January 17, 2012. During the January 19, 2012

hearing, the issue of this expert report was raised.  Bibow's counsel described the report as currently constructed as "speculative."  Lenox's counsel explained that, because the counterclaim for infringement (which as described above had been dismissed and then re-pleaded) was once again dismissed, there would be no need for a damages expert: "[I]t's based upon the infringement claim that you just struck . . . it pertains to an infringement claim that is not an issue."  I responded by saying that: "Right.  It probably should be revised then and as a result of this probably will disappear."

Rather than recognize that a damages expert report was unwarranted given the absence of a claim for monetary damages, counsel for Bibow filed a "supplemental" expert report dated February 6, 2012.  Upon motion by Lenox--and after multiple email communications from Lenox to Bibow urging withdrawal of the expert report--I struck the expert report, recognizing that a claim for damages was unwarranted and discovery upon such matters was rife with the opportunity to interfere with another's business.

   b. <u>The Protective Order</u>

As exhibits to its motion for sanctions, Lenox has attached the email chains which document its attempts to reach an agreement regarding a protective order to govern the exchange of confidential material during discovery.  My review of these emails confirms what Lenox contends regarding this process.  Mr.

13

Prevett's conduct was irresponsible, unproductive, and unbecoming. While Lenox's counsel tried diligently to find common ground, including seeking input from Mr. Prevett and making edits in response to his requests, Mr. Prevett was unattentive to the point of writing that he did not "have time to go through all those pages in your PO."

The result of Mr. Prevett's refusal to engage meaningfully in this process was that both parties filed motions requesting that this court enter protective orders to protect confidential information exchanged during discovery. Those filings involved a waste of the resources of this court and the parties, which directly resulted from the conduct of Bibow's counsel. This was unnecessary, as even Mr. Prevett conceded when, in response to my inquiry whether he had an actual issue with the entry of a protective order, he responded "No, there's no dispute about that."

### c. The Discovery Motions

I will not recite all of the discovery motions, including motions to compel, for protective orders, for extensions of time, and for other miscellaneous relief sought by Bibow. These requests were almost uniformly denied. Moreover, their multiplicity, along with their often frivolous nature, suggests that Bibow's counsel was unwilling to engage in meaningful discussions with opposing counsel, as is necessary to resolve litigation efficiently and expeditiously; that he demonstrated an

instinct to engage in motion practice on issues as a first, rather than last resort; and, more generally, that he lacked a firm grasp of the rules and responsibilities of attorneys practicing before this court.

The filing of so many motions, which taken together demonstrate so little merit, was vexatious and impeded the efforts required to resolve this matter fairly and expeditiously.

* * *

Taken together as a whole, I find Mr. Prevett's conduct, as counsel to Bibow, to have been vexatious. Looking for the root of this irresponsible and inappropriate conduct, I find its source in Mr. Prevett's resistance to advice and admonition. After Bibow's counterclaims were first dismissed, both this Court and opposing counsel explained to Mr. Prevett that those counterclaims were not legally viable and no longer a part of this case. Despite this, Mr. Prevett insisted, on multiple occasions, not only on re-filing those claims, but also serving expert reports and discovery requests, and filing motions to compel discovery, that were predicated on the dismissed claims. At each step, Mr. Prevett was warned that his pleadings and filings were unwarranted, frivolous, and potentially sanctionable. Nevertheless, having been warned, he persisted in his wrongheaded conduct. That conduct is sanctionable both because it involves "attempt[s] to introduce evidence on irrelevant matters in the face of numerous admonitions to

desist," and because it demonstrates "studied disregard of the need for an orderly judicial process." *Lamboy-Ortiz*, 630 F.3d at 246.

In making this determination, I recognize that Mr. Prevett appears at least initially to have misunderstood the import of some of my orders--including the import of my October 6, 2011 order dismissing Bibow's counterclaims numbered three through seven. This "misunderstanding" persisted long after it reasonably should have and infected his subsequent litigation tactics. Although lack of understanding or perhaps subcompetence may provide some explanation, it does not provide an excuse. It will, however, factor into my calculus of the appropriate sanction.

### *C.* *The Proper Sanction*

In determining the appropriate sanction under 28 U.S.C. § 1927, which I find to be the most appropriate rule of decision here, the amount of a sanction can be set either to deter inappropriate conduct or to compensate a party whose fees and expenses have been unnecessarily increased by the conduct of an adversary. Thus, unlike under Rule 11, sanctions are not limited to the minimum level necessary to deter repeated or similar conduct. *See Lamboy-Ortiz*, 630 F.3d at 247. At the same time, any sanction imposed under Section 1927 should be "carefully crafted to avoid dampening the legitimate zeal of an attorney in

16

representing his client." *Id.* (citations and alterations omitted).

Although I recognize that Mr. Prevett's conduct has imposed significant costs upon Lenox (some $237,000 in attorneys fees and costs by Lenox's calculation), I also observe that Lenox chose to commence this litigation as a preemptive declaratory judgment action in the first place. Under the circumstances, I will limit my sanction, as I have discretion to do, to that which I believe necessary to deter the sort of conduct that Mr. Prevett has engaged in on behalf of Bibow.

In outlining the appropriate approach to calibrating the amount of such a sanction, the First Circuit has found the factors listed in the Advisory Committee notes to Federal Rule of Civil Procedure Rule 11 to be instructive. *See Lamboy-Ortiz*, 630 F.3d at 247. Those factors include:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; ... whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants.

*Id.*

Here a significant sanction is warranted. Mr. Prevett's conduct, although perhaps at times arising from a lack of the

17

necessary competence, also involved a "failure to obey direct instructions by the judge, . . . behavior that was undeniably willful and disrespectful to the court and its processes . . . [Mr. Prevett] appeared unable or unwilling to learn from his mistakes, as his pattern of misconduct continued unabated despite numerous warnings."  *Id.* at 249.

I note also two factors which impose some limitation upon the appropriate amount of an award here.  First, the First Circuit has explained that sanctions imposed for purposes of deterring inappropriate litigation conduct "typically amount to less than $10,000."  *Id.* at 249 and n. 33 (gathering cases). Second, I am aware that Mr. Prevett, again like the sanctioned attorney in *Lamboy-Ortiz*, operates a small law office and that the imposition of a large sanction could "threaten financial disaster."  *Id.*

In light of these considerations, I will impose a sanction of $5,000 which I consider sufficient both to deter Mr. Prevett in his future conduct and to warn other similarly situated attorneys of the consequences of such conduct.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Sanctions (Dkt. No. 110) is GRANTED to the degree Mr. Prevett is ordered to pay to the Plaintiff the amount of $5,000.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT